1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    LA VANG,                                    Case No.  1:21-cv-01058-CDB (SS)

12                      Plaintiff,                 ORDER GRANTING PLAINTIFF'S MOTION
                                                   FOR SUMMARY JUDGMENT AND
13           v.                                    REMANDING ACTION FOR FURTHER
                                                   PROCEEDINGS UNDER SENTENCE FOUR
14    COMMISSIONER OF SOCIAL                       OF 42 U.S.C. § 405(g)
      SECURITY,[1]
15                                                 (Doc. 16, 18)
                      Defendant.
16

17

18           La Vang ("Plaintiff") seeks judicial review of a final decision of the Commissioner of

19    Social Security ("Commissioner" or "Defendant") denying her application for disability insurance

20    and supplemental security income benefits under the Social Security Act.  (Doc. 1).  The matter

21    currently is before the Court on the certified administrative record (Doc. 8) and the parties' briefs,

22    which were submitted without oral argument.  (Docs. 16, 18).[2]  Plaintiff asserts the

23

24           [1] On December 20, 2023, Martin O'Malley was named Commissioner of the Social
      Security Administration.  See https://www.ssa.gov/history/commissioners.html. He therefore is
25    substituted as the defendant in this action. See 42 U.S.C. § 405(g) (referring to the
      "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the
26    Commissioner shall, in [their] official capacity, be the proper defendant.").

27
             [2]  Both parties have consented to the jurisdiction of a magistrate judge for all proceedings
28    in this action, in accordance with 28 U.S.C. § 636(c)(1).  (Doc. 9).

Administrative Law Judge ("ALJ") erred in his analysis of two issues and requests the decision of the Commissioner be vacated and the case be remanded for further proceedings.  (Doc. 16 at 2-3, 11-19).

## I.   BACKGROUND

### A. Administrative Proceedings

On November 3, 2016, Plaintiff filed an application for benefits pursuant to Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.*, alleging a period of disability beginning on June 16, 2015.  (Administrative Record ("AR") at 281).  Plaintiff was 51 years old on the alleged disability onset date.  *Id.*  The Commissioner denied Plaintiff's application initially and again on reconsideration.  *Id.* at 241-45, 249-54.  Plaintiff submitted a written request for a hearing by an ALJ on June 23, 2017.  *Id.* at 255-57.

On February 14, 2019, Plaintiff represented by counsel, appeared for a hearing before ALJ Arthur Zeldman.  *Id.* at 130-59.  Vocational Expert ("VE") Sandra Trost, Interpreter Lillian Yang, and Hearing Reporter Charisa Kumar also appeared at the hearing.  *Id.*

### B. Medical Record

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

### C. Hearing Testimony

Plaintiff testified she lives in Fresno, California, with her children.  *Id.*  Plaintiff stated she attended and graduated from Fresno City College.  *Id.*  Plaintiff noted she took courses in English but needed an interpreter because she didn't remember a lot and didn't know some words.  *Id.*

Plaintiff testified that she was a receptionist and did data entry for Dr. Sucha Geariang Presart in 1992.  *Id.* at 136-37.  The ALJ asked Plaintiff if she worked for Vang Jung in 1993, but Plaintiff did not remember.  *See id.* at 137 ("I don't work in '93.  I don't quite remember that…").  Plaintiff noted she worked at KC Market from 1997 through 2003.  *Id.*  Plaintiff's responsibilities included stocking shelves, working as a cashier, and doing "everything inside the store."  *Id.*  Plaintiff testified she stopped working in 2003 because she could not carry stuff, memorize, or remember all the items in the aisle, and fainted while working as a cashier.  *Id.*

2

Plaintiff testified her physical and mental health has worsened since 2003.  *Id*. at 137-38.  Plaintiff noted she has memory loss and has difficulty going to the store.  *Id*. at 137.  Specifically, Plaintiff testified she could not wait in lines to pay for her stuff, and she would forget what she went to the store to buy.  *Id*.  Plaintiff also claimed when she tried to cook, she often burned her pots.  *Id*. at 137-38.  Plaintiff noted she cooks once or twice a week, but if her children are not around to remind her, she forgets she is cooking and burns her pots.  *Id*. at 138-39.  Plaintiff stated her children told her she has to be careful cooking because she will burn the house.  *Id*. at 140.  Despite this warning, Plaintiff testified she still cooks because she is depressed and hungry all the time and wants warm food to eat.  *Id*. at 139-40.

Plaintiff reported she told doctors she went to the store a couple times a month and would sometimes wash clothes.  *Id*. at 140.  Plaintiff testified she told doctors that she went for a walk "once a week or like a couple weeks."  *Id*.  Plaintiff noted she told doctors that, in the past, she liked to sew.  *Id*. at 141-42.  Plaintiff claimed at some point she stopped sewing because she made mistakes and could not sew anymore.  *Id*.  Plaintiff stated she no longer has an interest in sewing because of her depression.  *Id*.

Plaintiff testified she started having back pain and other physical problems when she stopped working.  *Id*. at 142.  Plaintiff reported her pain starts from her feet and goes up her lower back, neck, and head.  *Id*.  Plaintiff claimed this pain makes her become forgetful.  *Id*.  Plaintiff testified she saw doctors for her pain and underwent an x-ray but was unable to find out why she was in pain.  *Id*.  Plaintiff claimed she still has pain, and that pain gives her depression and anxiety.  *Id*.  Plaintiff testified she cannot hold a gallon of milk or a two-liter of Pepsi because of her pain.  *Id*. at 144.  Plaintiff stated she sees her doctor every three months for her pain and has been prescribed medication for her pain.  *Id*. at 144-45.

Plaintiff testified she started getting mental health treatment in 2000.  *Id*. at 147.  Plaintiff claimed after she gave birth in 2004 or 2005, she felt stressed, helpless, and that she could not work to support herself.  *Id*. at 146.  Plaintiff claimed she wanted to kill herself and was advised to seek mental health assistance.  *Id*.  Plaintiff went to the Fresno Center for New Americans for her mental health.  *Id*. at 145.  Plaintiff told the facility she had stress, was forgetful, depressed,

1  scared, and nervous.  *Id.* at 145-46.

2      Plaintiff testified she has been going to a mental health doctor every week for 19 years.

3  *Id.* at 147.  Plaintiff noted she had been hospitalized at times because she talked about killing

4  herself, that she was seeing and hearing things.  *Id.*  Plaintiff reported that when she was

5  prescribed the "right medication" and was able to take the medication, she felt better.  *Id.* at 148-

6  49.  Plaintiff noted at some point when her son was having difficulties, she took less medication

7  so she could watch over her son.  *Id.* at 149.  Plaintiff stated she is back to taking all the

8  medication she has been prescribed.  *Id.*

9      Next, Plaintiff stated when she tried to watch television "the sight of me, I kind of can see

10  tables or chairs that's like moving and it seems like they are picking on me, so I am scared."  *Id.*

11  at 150.  Plaintiff testified she cannot pay attention when she watches television and often falls

12  asleep.  *Id.*  Specifically, Plaintiff claimed if she watches television, she can focus on it for 10 or

13  20 minutes.  *Id.*  Plaintiff noted when she looks at her phone for a little bit it causes her to fall

14  asleep, and she has no interests and cannot focus.  *Id.*  Additionally, Plaintiff testified she can

15  stand for 10 to 20 minutes before she has to sit down and can only walk one to two blocks at a

16  time before she has to take a break.  *Id.* at 151.

17      The ALJ proffered a hypothetical to the VE of an individual with the same age and

18  education with the absence of past jobs as Plaintiff and who is limited to less than the full range

19  of medium work.  *Id.* at 152-53.  The individual can lift and carry 50 pounds occasionally, 25

20  pounds frequently, sit for six hours at a time, stand for six hours at a time, and walk for six hours.

21  *Id.* at 153.  Further, the individual can push or pull as much as can lift and carry, only reach

22  overhead to the left and right frequently, only stoop frequently, understand, remember, and carry

23  out instructions, able to perform simple routine tasks, and can have limited interactions with the

24  public.  *Id.*  The VE determined that an individual with such limitations could perform work in

25  several fields, including a hospital cleaner, floor waxer, and groundskeeper.  *Id.*

26      The ALJ proffered a second hypothetical of an individual similar to the first but with

27  additional limitations requiring reminders once every two hours to perform the tasks of the job.

28  *Id.* at 154.  The VE indicated that an individual with such limitations could also perform the work

1   in the first hypothetical.  *Id*.

2       Plaintiff's counsel proffered a hypothetical of an individual similar to the ALJ's second

3   hypothetical, "where the reminders are required every two hours, once every two hours, and not

4   just based on observation by the supervisors, meaning that it's a requirement of—that the

5   supervisors remind the worker or the individual every two hours of the duties or how to perform

6   the tasks."  *Id*. at 155.  The VE noted that would become problematic.  *Id*.

7       Plaintiff's counsel proffered a second hypothetical of an individual similar to the ALJ's

8   first hypothetical but had a poor ability to respond appropriately to changes in a work setting and

9   complete a normal workday and work week without interruptions from psychologically based

10  symptoms.  *Id*. at 155-56.  Plaintiff's counsel clarified the word "poor" as "[t]he evidence

11  supports some inclusion that the individual cannot usefully perform or sustain the activity."  *Id*.

12  The VE testified there would not be work available for that individual.  *Id*.  Thereafter, the ALJ

13  determined a post-hearing consultative exam by a psychiatrist was warranted.  *Id*. at 156-58.

14      **D. The ALJ's Decision**

15      On June 18, 2019, the ALJ issued a decision finding that Plaintiff was not disabled.  *Id*. at

16  20-34.  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520(a).

17  *Id*. at 23-.  The ALJ found Plaintiff had not engaged in substantial gainful activity since October

18  31, 2016, Plaintiff's application date (step one). *Id*. at 23.  The ALJ held Plaintiff possessed the

19  following severe impairment: major depressive disorder with psychotic features (step two).  *Id*.

20      The ALJ determined Plaintiff did not have an impairment or combination of impairments

21  that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404,

22  Subpart P, Appendix 1 ("the Listings") (step three).  *Id*. at 25-26.  The ALJ held Plaintiff had a

23  moderate limitation in understanding, remembering, or applying information.  *Id*. at 25.  The ALJ

24  considered Plaintiff's 2017 consultative examination wherein Plaintiff presented with a below

25  average fund of knowledge.  *Id*.  The ALJ noted Plaintiff reported she had difficulty with her

26  memory, understanding, and following instructions.  *Id*.  The ALJ noted at times Plaintiff had a

27  poor memory.  *Id*.  The ALJ pointed to other instances where Plaintiff was alert and oriented,

28  demonstrated average intelligence, normal cognition, and fair memory.  *Id*.  The ALJ also noted

1   during the consultative examination, Plaintiff was able to recall three out of three items

2   immediately and two items after five minutes, she was able to do a digit span five forward and

3   four backwards, and Plaintiff reported she was able to follow simple, short instructions. *Id.*

4         The ALJ held Plaintiff had mild limitations in interacting with others. *Id.* at 25. The ALJ

5   noted Plaintiff reported she had difficulty getting along with others and does not spend time with

6   others. *Id.* at 25. The ALJ reported at times Plaintiff presented with a depressed mood and

7   blunted affect. *Id.* The ALJ pointed to other instances where Plaintiff was pleasant and made eye

8   contact. *Id.* The ALJ noted she actively participated in group therapy sessions and offered

9   suggestions to other members. *Id.* The ALJ also considered Plaintiff's report she had never been

10   fired from a job due to her inability to get along with others. *Id.*

11         The ALJ held Plaintiff had a mild limitation in concentrating, persisting, or maintaining

12   pace. *Id.* The ALJ noted Plaintiff had reported she had difficulty completing tasks and

13   concentrating. *See id.* ("She noted she is unable to finish what she starts and can only pay

14   attention for fifteen minutes before she zones out."). The ALJ determined that on occasion,

15   providers reported Plaintiff had poor attention and concentration. *Id.* The ALJ noted during

16   consultative examinations Plaintiff was able to perform simple calculations and count backs. *Id.*

17   Further, Plaintiff "was able to perform digit span five forwards and four backwards correctly" and

18   "able to complete a three-step command." *Id.* The ALJ also considered Plaintiff's report she was

19   able to drive, "which invariable calls for a degree of attention." *Id.* at 25-26.

20         The ALJ held Plaintiff had a mild limitation in adapting or managing oneself. *Id.* at 26.

21   The ALJ noted Plaintiff reported occasionally hearing voices, visual hallucinations, and paranoid

22   ideations. *Id.* The ALJ considered Plaintiff's attendance in individual, family, and group therapy.

23   *Id.* The ALJ pointed to instances when Plaintiff was alert, oriented, had fair to normal insight and

24   judgment, organized thought process, and denied having suicidal and homicidal ideations. *Id.*

25         The ALJ then assessed Plaintiff's residual functional capacity ("RFC"). *Id.* The ALJ found

26   that Plaintiff retained the RFC:

27         "to perform medium work as defined in 20 CFR 416.967(c) except the claimant can
           lift and carry fifty pounds occasionally and twenty five pounds occasionally and can

28

sit, stand or walk for six hours.  The claimant can push and pull as much as she can lift and carry.  The claimant can only reach overhead to the left and right frequently.  The claimant can stoop frequently.  The claimant can understand, remember and carryout instructions.  The claimant is able to perform simple, routine tasks.  The claimant can have limited public contact."

*Id*.  The ALJ noted Plaintiff testified:

"she suffers from depression and anxiety.  She reported she does not have motivation or interest in doing things around the house and ends up sleeping most of the day.  The claimant reported experiencing auditory and visual hallucinations.  She described seeing chairs moving and walking and hearing people walking on the roof.  In addition, the claimant reported she is easily stressed and has difficulty adjusting to changes or new routines.  The claimant also reported feeling angry and easily irritable.  She noted she frequently breaks things.  Further, the claimant reported she has difficulty with her memory, completing tasks, concentrating, understanding, following instructions and getting along with others.  She noted she cannot finish what she starts and is only able to pay attention for fifteen minutes.  Moreover, the claimant also testified she frequently burns pots and pans due to her forgetfulness []."

*Id*. at 27-28.  The ALJ acknowledged that while Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record.  *Id*. at 28.

The ALJ determined that "other evidence" was inconsistent with Plaintiff's allegations of disabling symptoms.  *Id*.  The ALJ noted Plaintiff was alert and oriented, she denied having suicidal and homicidal ideations, was pleasant, made eye contact, and actively participated in group therapy sessions and offered suggestions to other members.  *Id*.  The ALJ found Plaintiff had demonstrated average intelligence, normal cognition, organized thought process, fair memory, and fair to normal insight and judgment.  *Id*.

Further, the ALJ highlighted that during Plaintiff's 2017 consultative evaluation, she did not present with any involuntary movements or unusual mannerisms.  *Id*. at 29.  The ALJ noted the examiner reported no indications of hallucinations or delusions and that Plaintiff had a "euthymic mood and appropriate affect."  *Id*.  The ALJ found Plaintiff was able to perform simple calculations and count backwards.  *Id*.  Plaintiff was able to recall

1   three out of three items immediately and after five minutes was able to complete a three-

2   step command.  *Id.*  Further, Plaintiff's thought process was linear, logical, coherent, and

3   goal directed.  *Id.*

4       The ALJ also highlighted Plaintiff's 2019 consultative examination.  *Id.*  The ALJ

5   noted Plaintiff was not responsive to internal stimuli but was able to perform a digit span

6   five forwards and four backwards correctly.  *Id.*  Plaintiff was able to recall three out of

7   three items immediately, two items after five minutes, and perform simple calculations.  *Id.*

8       The ALJ found that "[d]espite [Plaintiff's] combination of alleged impairments,

9   [Plaintiff] engaged in a somewhat normal level of daily activity and interaction."  *Id.*  The

10   ALJ noted Plaintiff "admitted to activities of daily living including household chores, yard

11   work, preparing meals, going to the grocery store, performing self-care activities such as

12   dressing and bathing, socializing with others, and displaying sufficient concentration and

13   attention to drive."  *Id.*  The ALJ found some of the physical and mental abilities and social

14   interactions required were the same as those necessary for obtaining and maintaining

15   employment.  *Id.*  The ALJ determined Plaintiff's ability to participate in such activities

16   was inconsistent with her allegations of functional limitations.  *Id.*

17       The ALJ reviewed opinion evidence from state agency psychological consultants

18   Drs. Lief Leaf and Peter Bradley.  *Id.*  Drs. Leaf and Bradley opined Plaintiff could

19   perform simple, routine tasks, and could have limited public contact.  *Id.*  The ALJ gave

20   significant weight to Drs. Leaf and Bradley's opinions as they were consistent with the

21   record.  *Id.*; *Supra* 5-6.

22       Next, the ALJ considered a consultative examination by Dr. Ekram Michiel in May

23   2019.  *Id.* at 30.  Dr. Michiel diagnosed Plaintiff with "depressive disorder, not otherwise

24   specified, and psychotic disorder, in remission."  *Id.*  Dr. Michiel determined Plaintiff

25   could maintain attention and concentration to carry out simple job instructions.  *Id.*  Dr.

26   Michiel reported Plaintiff could relate and interact with co-workers, supervisors, and the

27   general public while in the routine setting of performing simple job instructions.  *Id.*  Dr.

28   Michiel noted Plaintiff would have marked limitations in her ability to make judgments on

complex work-related decisions.  *Id*.  Dr. Michiel also found Plaintiff would have moderate limitations in her ability to carry out complex instructions and respond appropriately to usual work situations and to changes in a routine work setting.  *Id*.  The ALJ gave significant weight to Dr. Michiel's opinion, as it was "consistent with the exam findings and the record as a whole."  *Id*.  The ALJ then repeated word-for-word the same reasoning and cited the same exhibits he provided in weighing the opinions of Drs. Leaf and Bradley. *Id*.

The ALJ also considered a consultative examination by Dr. Mary Lewis in January 2017.  *Id*. at 30-31.  Dr. Lewis opined Plaintiff "would have a mild impairment in her ability to perform detailed and complex tasks; to perform work activities on a consistent basis without special or additional instruction; to complete a normal workday/workweek without interruptions from a psychiatric condition, to deal with the usual stress encountered in the workplace."  *Id*. at 30.  Dr. Lewis noted Plaintiff may not be capable of managing her finances.  *Id*.  The ALJ gave significant weight to Dr. Lewis' opinion, as it was consistent with the exam findings and the record as a whole.  *Id*. at 30-31.  The ALJ then repeated word-for-word the same reasoning and cited the same exhibits he provided in weighing the opinions of Drs. Leaf, Bradley, and Michiel.  *Id*. at 30-31.

Next, the ALJ considered a medical source statement from Plaintiff's treating provider, Dr. Valerie E. Forward, issued in December 2016.  *Id*. at 31.  Dr. Forward opined Plaintiff "had a poor ability to understand, remember and carry out complex instructions; maintain concentration, attention and persistence; perform activities within a schedule and maintain regular attendance; complete a normal workday and workweek without interruptions from psychologically based symptoms; interact appropriately with the public and respond appropriately to changes in a word setting."  *Id*. The ALJ gave little weight to Dr. Forward's opinion as it was "not consistent with the record and there [was] no indication Dr. Forward had any future contact with [Plaintiff]."  *Id*.  The ALJ then repeated word-for-word the same reasoning and cited the same exhibits he provided in weighing the opinions of Drs. Leaf, Bradley, Michiel, and Lewis.  *Id*.

The ALJ then noted that the record contained numerous Global Assessment of Functioning ("GAF") scores ranging from 55-65.  *Id*.  The ALJ acknowledged "the Commissioner had declined to endorse the GAF scale for 'use in Social Security and SSI disability programs,' and has indicated GAF scores have no 'direct correlation to the severity requirements [of the] mental disorders listings.'"  *Id*. (citation omitted).  The ALJ also noted that GAF scores were a snapshot of a claimant's level of functioning at a particular time and not an indication of overall functioning, and the scores were not intended for forensic purposes, such as an "assessment of disability, competency, or the individual's control over such behavior."  *Id*.  The ALJ held that "[w]hile some weight was given to these scores, [he] must rely on evidence that demonstrate[d] the [Plaintiff's] overall ability to function."  *Id*.

The ALJ also considered a third-party function report by Sumaly Vang, Plaintiff's daughter.  *Id*. at 31-32.  Sumaly Vang opined Plaintiff had difficulty lifting, squatting, bending, standing, reaching, kneeling, climbing stairs, and walking.  *See id*. at 31-32 ("Ms. Vang reported the claimant can only walk for one block before she would need to rest for ten minutes.").  Sumaly Vang also opined Plaintiff had difficulty with her memory, completing tasks, concentrating, following instructions and getting along with others.  *Id*. at 32.  Sumaly Vang asserted Plaintiff cannot finish what she starts and is only able to pay attention for up to thirty minutes.  *Id*.  The ALJ gave some weight to Sumaly Vang's opinion to the extent she discussed firsthand observations of what Plaintiff does from day to day.  *Id*.  The ALJ gave no weight to Sumaly Vang's opinion to the extent she opined on what Plaintiff is capable of doing, as she is not a medical professional trained to make assessments of functional ability.  *Id*.  The ALJ determined that Sumaly Vang's opinion "certainly does not outweigh the medical evidence regarding the extent to which [Plaintiff's] impairments limit her functional abilities."  *Id*.

The ALJ held that the RFC assessment was supported by the totality of the lay and medical evidence, noting specifically that Plaintiff appeared to get adequate symptom relief with only routine and conservative treatment.  *Id*.  The ALJ found Plaintiff was "capable of

performing work within the functional parameters of this [RFC] assessment." *Id.* The ALJ

determined that Plaintiff had no past relevant work (step four) but could perform a

significant number of other jobs in the national economy, including hospital cleaner, floor

waxer, and groundskeeper (step five). *Id.* at 32-33. The ALJ concluded Plaintiff has not

been under a disability as defined in the Act. *Id.* at 33-34.

### E. The Appeals Council's Decision

On April 9, 2020, the Appeals Council denied Plaintiff's request for review, making the

ALJ's decision the final decision of the Commissioner. *Id.* at 6-8. Plaintiff filed this action on

July 6, 2021, seeking judicial review of the denial of her application for benefits. (Doc. 1). The

Commissioner lodged the administrative record on December 16, 2021. (Doc. 8). Plaintiff filed

an opening brief on April 8, 2022. (Doc. 16). On May 23, 2022, Defendant filed a responsive

brief. (Doc. 18).

## II.    LEGAL STANDARD

### A. The Disability Standard

Disability Insurance Benefits and Supplemental Security Income are available for every

eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii) and 1381(a). An individual

is "disabled" if unable to "engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment …"[3] *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987)

(quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)). To

achieve uniformity in the decision-making process, the Social Security regulations set out a five-

step sequential evaluation process to be used in determining if an individual is disabled. *See* 20

C.F.R. § 404.1520; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004).

Specifically, the ALJ is required to determine:

> (1) whether a claimant engaged in substantial gainful activity during the period of
> alleged disability, (2) whether the claimant had medically determinable "severe"
> impairments, (3) whether these impairments meet or are medically equivalent to one

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or
psychological abnormalities that are demonstrated by medically acceptable clinical and laboratory
diagnostic techniques. 42 U.S.C. § 423(d)(3).

1
2
3

of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the RFC to perform past relevant work and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.

4   *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof

5   is on a claimant at steps one through four.  *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020)

6   (citing *Valentine v. Comm'r of Soc. Sec. Admin*, 574 F.3d 685, 689 (9th Cir. 2009)).

7        Before making the step four determinations, the ALJ first must determine the claimant's

8   RFC.  20 C.F.R. § 416.920(e).  The RFC is the most a claimant can still do despite their

9   limitations and represents an assessment based on all relevant evidence.  20 C.F.R. §§

10  404.1545(a)(1); 416.945(a)(1)).  The RFC must consider all of the claimant's impairments,

11  including those that are not severe.  20 C.F.R. § 416.920(e); § 416.945(a)(2).  *E.g.*, *Buck v.*

12  *Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) ("[i]n assessing RFC, the adjudicator must

13  consider limitations and restrictions imposed by all of an individual's impairments, even those

14  that are not 'severe.'") (quoting Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5

15  (July 2, 1996)).  The RFC is not a medical opinion.  20 C.F.R. § 404.1527(d)(2).  Rather, it is a

16  legal decision that is expressly reserved to the Commissioner.  20 C.F.R. § 404.1546(c); *see*

17  *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not

18  the claimant's physician, to determine residual functional capacity.").

19       At step five, the burden shifts to the Commissioner to prove that Plaintiff can perform

20  other work in the national economy given the claimant's RFC, age, education, and work

21  experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).  To do this, the ALJ can use

22  either the Medical-Vocational Guidelines or rely upon the testimony of a VE.  *Lounsbury v.*

23  *Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006); *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th

24  Cir. 2001).  "Throughout the five-step evaluation, the ALJ 'is responsible for determining

25  credibility, resolving conflicts in medical testimony and for resolving ambiguities.'"  *Ford*, 950

26  F.3d at 1149 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

27  ///

28

1

**B. Standard of Review**

2      Congress has provided that an individual may obtain judicial review of any final decision

3  of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In

4  determining whether to reverse an ALJ's decision, a court reviews only those issues raised by the

5  party challenging the decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  A

6  court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on

7  legal error or are not supported by substantial evidence.  *Tackett v. Apfel*, 180 F.3d 1094, 1097

8  (9th Cir. 1999).

9      "Substantial evidence is relevant evidence which, considering the record as a whole, a

10  reasonable person might accept as adequate to support a conclusion."  *Thomas v. Barnhart*, 278

11  F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453,

12  1457 (9th Cir, 1995)).  "[T]he threshold for such evidentiary sufficiency is not high."  *Biestek v.*

13  *Berryhill*, 139 S. Ct. 1148, 1154 (2019).  Rather, "[s]ubstantial evidence means more than a

14  scintilla, but less than a preponderance; it is an extremely deferential standard."  *Thomas v.*

15  *CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted).

16      "[A] reviewing court must consider the entire record as a whole and may not affirm

17  simply by isolating a specific quantum of supporting evidence."  *Hill v. Astrue*, 698 F.3d 1153,

18  1159 (9th Cir. 2012) (internal quotations and citations omitted).  "If the evidence 'is susceptible

19  to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'"  *Ford*,

20  950 F.3d at 1154 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).  Even if the

21  ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless.  *Stout*,

22  454 F.3d at 1055-56.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate

23  nondisability determinations."  *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008)

24  (quotation and citation omitted). The burden of showing that an error is not harmless "normally

25  falls upon the party attacking the agency's determination."  *Shinseki v. Sanders*, 556 U.S. 396,

26  409 (2009).

27  ///

28

13

III.    LEGAL ISSUES

Plaintiff asserts the ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations and failed to offer legitimate reasons for rejecting her subjective complaints.  (Doc. 16 at 3, 11-16).  Plaintiff also argues the ALJ failed to articulate specific and legitimate reasons for rejecting the treating source opinion, resulting in an insufficient RFC.  *Id*. at 3, 16-19.

IV.    DISCUSSION

**A.     Whether the ALJ failed to offer clear and convincing reasons for rejecting Plaintiff's subjective complaints.**

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  The ALJ must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Id*. (internal quotation marks omitted).  "The claimant is not required to show that this impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives specific, clear and convincing reasons for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see Thomas*, 278 F.3d at 958 ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").

However, "[t]he standard isn't whether [the] court is convinced, but instead, whether the ALJ's rationale is clear enough that it has the power to convince."  *Smartt v. Kijakazi*, 53 F.4th

489, 499 (9th Cir. 2022).  An ALJ's reasoning as to subjective testimony "must be supported by substantial evidence in the record as a whole."  *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995); *see Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Accordingly, our next task is to determine whether the ALJ's adverse credibility finding of Carmickle's testimony is supported by substantial evidence under the clear-and-convincing standard.").

 Plaintiff argues that the ALJ ignored evidence favorable to her claim.  (Doc. 16 at 13).  Plaintiff notes there are 328 pages of medical evidence and 95 of those pages directly pertain "to Plaintiff's weekly mental health treatment for a substantial period of her disability."  *Id*.  Plaintiff asserts the ALJ referenced "only three pages from this swath of evidence" to support his findings and ignored the other 92 pages that support her allegation of disability.  *Id*.

Next, Plaintiff claims the three pages the ALJ cited do not support a finding of non-disability.  *Id*. at 13-14.  Plaintiff argues the June 27, 2018, and August 29, 2018, treatment notes demonstrate she is unable to sustain activities unassisted.  *Id*.  Plaintiff contends the ALJ's reliance on an August 14, 2018, treatment note indicating that Plaintiff was engaged in a therapy session is immaterial compared to an "overwhelming majority of [notes] in the same exhibit…[indicating Plaintiff] was not engaged, or displayed increased frustration when participating.  *Id*. at 14.

In response, Defendant argues the ALJ summarized Plaintiff's allegations at some length and the ALJ's clear consideration of specific allegations satisfied his burden under *Lambert*.  *Id*. (citing 980 F.3d at 1277) (Ninth Circuit cases "do not require ALJS to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits.")).  Defendant argues the ALJ gave Plaintiff's statements less weight because they were inconsistent with her treatment record, and Drs. Bradley, Leaf, Lewis, and Michiel's opinions.  *Id*. at 13-15.

Here, the ALJ identified an instance where Plaintiff "actively participated in group therapy sessions and offered suggestions to other members" as medical evidence to discount Plaintiff's subjective testimony.  (AR at 28, 657).  However, Plaintiff's Fresno Center for New

Americans-Living Well Program treatment records from December 14, 2016, through October 3, 2018, detail higher levels of limitation that the ALJ did not discuss.  *Id*. at 634-729.

The pages at issue detail Plaintiff's self-reports, therapy activities for Plaintiff, notes on Plaintiff and her treatment, and plans.  *Id*.  Throughout this treatment period, Plaintiff generally self-reported physical pain, insomnia, headaches, and feelings of numbness, stress, frustration, anger, forgetfulness, fatigue, worthlessness, hopelessness, loss of interest, and sadness.  *Id*. at 635-37, 639-41, 644-48, 650-87, 689, 691-96, 698,700-09,711-23, 725, 729-29.  The ALJ correctly identified an instance where Plaintiff participated "actively with group members during discussion and offer[ed] suggestions for group members."  *Id*. at 657.  Similarly, these medical records show other times Plaintiff was engaged and able to participate in therapy activities.  *Id*. at 646-50, 655-56, 658-59, 661, 662-63, 665, 669, 671, 674-79, 685, 691, 694-96, 699, 702-03, 706, 711, 714, 716-20, 723, 728-29.  However, as Plaintiff correctly points out, these relevant medical records demonstrate that Plaintiff was also unable to engage in therapy and had difficulty participating without support.  *Id*. at 651-55, 659, 660, 667-68, 670, 675-76, 681-84, 687, 689-92, 695, 697, 699-701, 705, 707-08, 714.

An ALJ must base his decision on "all the evidence available in the [record]."  42 U.S.C. § 423(d)(5)(B); *Ghanim*, 763 F.3d at 1164.  A court may not affirm by isolating a "specific quantum of supporting evidence."  *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  Moreover, an ALJ may not "cherry-pick" negative findings of mental impairments and ignore positive findings.  *See Holohan v. Massanri*, 246 F,3d 1195, 1207 (9th Cir. 2001) (reversing where the ALJ "selectively relied on some entries [in the plaintiff's treatment records] and ignored the many others that indicated continued, severe impairment.").

Under this authority, the ALJ's reliance on a single group therapy session note (AR at 657) to discount Plaintiff's testimony was error.  The note details Plaintiff was able to participate actively with group members during the discussion and offer suggestions for group members, but it does not adequately reflect Plaintiff's participation in group therapy from December 2016 through October 2018, as noted above.  A more thorough discussion by the ALJ was needed on these treatment records.

1    Next, Plaintiff claims the ALJ mischaracterized her ability to perform activities of daily

2 living.  (Doc. 16 at 14).  Plaintiff asserts the mere fact that she performed certain daily activities

3 of daily living, "such as shopping, driving a car, or limited walking for exercise does not in any

4 way detract from her credibility as to overall disability." *Id*. at 14-15.  Plaintiff also objects to the

5 ALJ's characterization of her abilities as "somewhat normal." *Id*. at 15.  Plaintiff claims she had

6 difficulty performing activities of daily living and needed assistance and reminders for activities

7 of daily living.  *Id*.  In contrast, Defendant contends Plaintiff engaged in activities that were

8 inconsistent with her alleged mental symptoms.  (Doc. 18 at 14-15).

9    An ALJ is "permitted to consider daily living activities" in addressing a Plaintiff's

10 subjective statements.  *Burch*, 400 F.3d at 681.  Daily activities "form the basis for an adverse

11 credibility determination" when: (1) the daily activities contradict the claimant's other testimony

12 or (2) the daily activities meet the threshold for transferable work skills.  *Orn v. Astrue*, 495 F.3d

13 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).  A claimant

14 need not be "utterly incapacitated" to be eligible for benefits.  *Fair*, 885 F.2d at 603.

15    As set forth above (*supra* 8), the ALJ found that despite Plaintiff's allegations she was

16 able to engage in a "somewhat normal level of daily activity and interaction."  AR at 29.  The

17 ALJ then identified the following activities in which Plaintiff engaged:  household chores, yard

18 work, preparing meals, going to the grocery store, performing self-care activities such as dressing

19 and bathing, socializing with others, and driving.  *Id*.  The ALJ determined "[s]ome of the

20 physical and mental abilities and social interactions required in order to perform these activities

21 were the same as those necessary for obtaining and maintaining employment."  *Id*.

22    While the ALJ cited examples of Plaintiff's activities of daily living from the record (*id*.),

23 he undertook no analysis of these aforementioned activities.  An ALJ must identify what parts of

24 Plaintiff's testimony are inconsistent with Plaintiff's activities of daily living and explain where

25 and how the inconsistency arises.  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103

26 (9th Cir. 2014); *see Yamada v. O'Malley*, No. 1:20-cv-001386-JLT-BAM, 2024 WL 3226798, at

27 *7 (E.D. Cal. June 28, 2024) ("Courts in this district have found that the ALJ erred when the ALJ

28 failed to precisely identify how the daily activities conflicted with symptom testimony.") (citing

1  cases).

2       Here, the ALJ has not proffered any analysis explaining how Plaintiff's testimony was

3  inconsistent with her daily activities.  For instance, while the ALJ held Plaintiff could "prepare

4  meals" (AR at 29, 333, 515, 731), Plaintiff's testimony and the record indicates that without

5  reminders, she often attempted to cook food, forgot what she was cooking and in the ALJ's

6  words, is "ruining your pots and endangering your life."  *Id*. at 138-40, 331, 344, 641.  Similarly,

7  while the ALJ held Plaintiff performed "self-care activities such as dressing and bathing" (*id*. at

8  29, 333), the ALJ failed to address records that indicated the opposite:  that Plaintiff was often

9  disheveled, with poor grooming and hygiene.  *Id*. at 647, 651, 654, 658, 662-63, 677-80, 683,

10  685-86, 689, 698, 703, 706.  Therefore, the ALJ's failure to offer any discussion explaining how

11  Plaintiff's testimony was inconsistent with her daily activities falls short of the specific, clear, and

12  convincing standard.

13       Defendant's argument that the ALJ properly gave more weight to Drs. Leaf, Bradley,

14  Lewis, and Michiel's opinions than Plaintiff's statements is unavailing.  (Doc. 18 at 15).  Whether

15  the ALJ found medical opinions more persuasive than Plaintiff's testimony is not dispositive.

16  What matters is whether those opinions contradict Plaintiff's testimony.  *See Carmickle*, 533 F.3d

17  at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's

18  subjective testimony); *see also Kitchen v. Kijakazi*, 82 F.4th 732, 739 (9th Cir. 2003) (upholding

19  discounting of claimant's credibility where most of the medical examiners opined that the

20  claimant's mental limitations were "mild or moderate" and the claimant's functioning had

21  improved with treatment).

22       Here, the ALJ afforded significant weight to all four physicians' opinions as they were

23  consistent with exam findings and the record as a whole.  AR at 29-30.  However, as detailed

24  above, it is not clear that the ALJ considered a substantial part of the record.  Beyond three pages

25  of treatment notes, Plaintiff's treatment records from December 2016 through October 2018 are

26  unaddressed by the ALJ.  Therefore, the ALJ's reliance on four medical opinions that are

27  consistent with the record is dubious.

28       Additionally, the ALJ offers no analysis of how the opinions of Drs. Leaf, Bradley, Lewis,

and Michiel contradict Plaintiff's subjective complaints. *Id.* Instead, the ALJ simply summarizes the doctors' proposed limitations and identifies the same medical records in support of all of their proposed limitations. *Id.* The observations an ALJ makes as part of a summary of the medical record are not sufficient to establish clear and convincing reasons for rejecting a Plaintiff's credibility. *Argueta v. Colvin*, No. 1:15-cv-01110-SKO, 2016 WL 4138577, at *13 (E.D. Cal. Aug. 3, 2016) (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). The ALJ failed to link Plaintiff's testimony with the aforementioned medical opinions and explain how his statements were contradicted.

In light of the foregoing, the Court concludes that the ALJ erred by failing to provide clear and convincing reasons to discount Plaintiff's subjective statements.

**B.      Whether the ALJ committed harmful error by failing to provide specific and legitimate reasons for rejecting Dr. Forward's opinion.**

Because the Court finds reversal is warranted, the undersigned declines to adjudicate Plaintiff's separate claim of error regarding the ALJ's evaluation of Dr. Forward's opinion. *See Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990) ("Because we reverse, we do not reach the other arguments raised."); *see also Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) (same); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand."); *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) (per curiam) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do not consider the appellant's other claims.").

**V.      REMEDY**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Plaintiff requests the Court remand this case for payment of benefits based on the credit-as-true rule. (Doc. 18 at 37). Generally, an award of benefits is directed when:

(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292.  In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1998).  Even if all the conditions for an award of benefits are met, the Court nevertheless retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act."  *Garrison*, 759 F.3d at 1021; *see Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015).

Here, the ALJ failed to provide clear and convincing reasons to discredit Plaintiff's subjective complaints.  The Court finds that based on the ALJ's opinion and the Court's review of the record, material doubts exist as to whether Plaintiff is in fact disabled due to her mental impairments.  The Court orders this action remanded for further administrative proceedings consistent with this opinion, and to further develop the record as deemed necessary.

## VI.    CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ erred in failing to provide clear and convincing reasons supported by substantial evidence in the record to discount Plaintiff's subjective complaints.  Accordingly, IT IS HEREBY ORDERED:

1.  Plaintiff's motion for summary judgment (Doc. 16) is GRANTED;

2.  That the decision of the Commissioner is reversed, and this matter is remanded back to the Commissioner of Social Security for further proceedings consistent with this order; and

*Remainder of This Page Intentionally Left Blank*

3.  The Clerk of Court is DIRECTED to enter judgment in favor of Plaintiff La Vang and against Defendant Martin O'Malley, Commissioner of the Social Security Administration.

IT IS SO ORDERED.

Dated:   **August 29, 2024**

_____
UNITED STATES MAGISTRATE JUDGE